UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    vs.<br><br>LYLE HOLTON,<br><br>        Defendant. | CR. 19-50112-01-JLV<br><br><br><br>ORDER |

## INTRODUCTION

Defendant Lyle Holton filed a motion to suppress all evidence obtained as the result of the stop of the vehicle he was driving on May 17, 2019.   (Docket 112).   The motion was referred to United States Magistrate Judge Daneta Wollmann pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of April 1, 2018.   The magistrate judge conducted an evidentiary hearing.   (Docket 149).   Magistrate Judge Wollmann issued a report and recommendation ("R&R").   (Docket 140).   The magistrate judge recommended the defendant's motion be denied.   Id. at pp. 1 & 9.   Mr. Holton timely filed his amended objections to the R&R.   (Docket 146).   For the reasons stated below, the defendant's amended objections are sustained in part and overruled in part and the R&R is adopted consistent with this order.

## DEFENDANT'S OBJECTIONS

Mr. Holton objects to the R&R for four reasons, summarized as follows:

1.    The surveillance team did not continue to relay information relating to the location of defendant's vehicle;[1]

---

[1]The court uses the phrase "defendant's vehicle" for ease of clarity as law enforcement was unaware of the name of the male driver until the vehicle was stopped.   (Docket 149 at p. 36:8-13 and p. 37:5-8).

2.      The suburban was not speeding;

3.      The baggie was not tested for heroin; and

4.      The stop of defendant's vehicle was not constitutional.

(Docket 146).   Each of the defendant's objections will be addressed.

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files a written objection to the magistrate judge's proposed findings and recommendation, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   Id.   The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   Id.   See also Fed. R. Crim. P. 59(b)(3).   The court completed a *de novo* review of those portions of the R&R and the record before the magistrate judge.   Unless otherwise indicated, the court's findings are consistent with the findings made by the magistrate judge.

**ANALYSIS**

1.      THE SURVEILLANCE TEAM DID NOT CONTINUE TO RELAY INFORMATION RELATING TO THE LOCATION OF DEFENDANT'S VEHICLE

The magistrate judge found:

Troopers Griffith and Nelson stationed themselves in their patrol vehicles closer to Rapid City in a median crossover near mile marker 65 on Highway 79 in Pennington County, a four-lane highway with two lanes in both directions.   Surveillance units continued to relay information on the Suburban's location as it traveled towards Rapid City, they also advised that a male was driving the Suburban.

(Docket 140 at p. 5).

2

Defendant objects to the magistrate judge's finding.   (Docket 146 at pp. 1-2).   Mr. Holton claims this finding "is factually inaccurate."   Id. at p. 2. He argues there was no evidence presented at the suppression hearing that the surveillance team continued to relay information to the troopers as to the progress of defendant's vehicle as it approached Rapid City.   Id.   Rather, he asserts the evidence only disclosed the troopers were advised as to what the "vehicle looked like, and that it was traveling north bound on Highway 79 after it left Hot Springs."   Id.

The suppression hearing developed the following evidence.   Ryan Gephardt, a detective with the Rapid City Police Department and member of the Unified Narcotics Enforcement Team, testified during the suppression hearing.   (Docket 149 at p. 4).   Detective Gephardt testified law enforcement surveillance team members were set up along the route it was expected defendant's vehicle would take returning to Rapid City from Denver, Colorado. Id. at p. 18:12-13.   Detective Gephardt testified the surveillance team relayed to Trooper Griffith the vehicle had been spotted and was coming back to Rapid City.   Id. at p. 19:19-22 & p. 20:3-5.

South Dakota Highway Patrol Trooper Griffith testified.   Id. at p. 28.   He stationed his Highway Patrol vehicle at a median crossover on Highway 79 between Rapid City and Hermosa.   Id. at p. 37:16-19.   Once the defendant's vehicle was spotted back in South Dakota, Trooper Griffith was advised the surveillance team reported the vehicle was being driven by a man.   Id. at

3

p. 37:9-13.   The surveillance team reported the vehicle, a green Suburban with the license plate number, with two people in the Suburban was reported as getting close to Trooper Griffith's location.   Id. at pp. 38:25-39:25.   After this report, the defendant's vehicle came into the trooper's view.   Id. at p. 40:17-22. This information was confirmed during defendant's cross-examination of the officer.   "[Y]ou guys were given information by the team from south of you, the UNET units, that this vehicle is approaching your direction. Right? . . . Yes." Id. at p. 49:17-20.   The evidence supports the magistrate judge's finding.

Defendant's first objection to the R&R is overruled.

2.      THE SUBURBAN WAS NOT SPEEDING

The magistrate judge found "Trooper Griffith used his radar to obtain the Suburban's speed.   The radar gave a reading of 66 miles per hour [in a 65-miles per hour zone]."   (Docket 140 at p. 5).   Mr. Holton objects that this statement "is not entirely accurate nor [sic] supported by the objective evidence."   (Docket 146 at p. 2).

Mr. Holton asserts the report generated by the electronic tracking surveillance equipment ("ETSE") placed on the vehicle pursuant to a search warrant contradicts Trooper Griffith's testimony.[2]   (Docket 146 at p. 2).   He

---

[2]The ETSE digital report was admitted during the suppression hearing as Exhibit 106.   (Docket 137).   The report is actually saved on Exhibit 104, which is the thumb drive containing the dash camera video produced from Trooper Griffith's vehicle.   (Docket 149 at pp. 63:3-64-2).

4

argues "the [GPS]³ tracking information . . . shows when the vehicle is first seen by Trooper Griffith, [the Suburban] was actually traveling 65 miles per hour."   Id.   Mr. Holton submits the GPS report verifies the Suburban "never went above 64 miles per hour after Trooper Griffith encountered it."   Id. at pp. 2-3.   For these reasons, defendant contends "[t]here is no objective evidence" that the Suburban ever broke the speed limit during the time in question.   Id. at p. 3.

Defense counsel engaged Trooper Griffith in a discussion about the accuracy of the ETSE by the GPS readings generated.   (Docket 149 at p. 64-69).   The essence of the trooper's observations of Exhibit 106 is summarized by the following statement:

> I don't use GPS to monitor a vehicle's speeds, I guess.   I don't know anybody who does.   So I'm explaining why my radar might have acted in your client's benefit supporting what I'm saying.   It might show a slower speed, I guess, because of the angle between the radar and the target.   There's also a margin of error.   The radar has a margin of error plus or minus one mile per hour when it's in the stationary mode.

Id. at p. 68:2-10.

---

³Defense counsel identifies the ETSE report as disclosing the "GIS" tracking information, but throughout the suppression hearing the questions posed of Trooper Griffith indicated the report illustrated the "GPS" [global positioning system] tracking information of the vehicle.   (Docket 149 at pp. 62:3, 68:3 & 25, 69:3, 74:16, 75:12 & 76:17).   On only one occasion during the hearing did defense counsel use the term "GIS."   See id. at p. 76:5. For these reasons, the court presumes counsel intended defendant's argument to address the GPS tracking information generated by the ETSE placed on the Suburban.

The magistrate judge accepted Trooper Griffith's testimony over the GPS readings generated by the ETSE.   That decision is consistent with the evidence presented on the issue.   The fact that Trooper Griffith recorded the vehicle's speed at 66 miles per hour but waited almost four miles to stop the vehicle is neither illogical nor contrary to his initial observation.   Trooper Griffith explained:

> I don't necessarily flip on my lights as soon as I see something wrong.   It would communicate that I'm going to stop the car.   And then turn on my lights in an area that's safe to do so. . . . [The location where the stop occurred] is very wide . . . with a good shoulder.

Id. at p. 72:10-17.   There is no error in the magistrate judge's analysis or the factual finding made.

Defendant's second objection to the R&R is overruled.

3.     THE BAGGIE WAS NOT TESTED FOR HEROIN

Defendant objects to the magistrate judge's finding that the plastic bag discovered in Mr. Holton's mouth tested positive for heroin residue.   Id.   He claims the substance "was never tested."   (Docket 146 at p. 3).

The magistrate judge found "a plastic bag with heroin residue was found in Mr. Holton's mouth."   (Docket 140 at p. 6).   This finding is generated from Exhibit 101, the primary report of Trooper Griffith, which was offered by defendant during the suppression hearing.   (Docket 149 at pp. 45:22-46:6). The report indicates once Ms. Mink and Mr. Holton were placed in separate patrol cars, Mr. Holton was observed "making furtive movements in the patrol

6

vehicle."   Exhibit 101 at p. 2.   At that point, Special Agent B. J. George

removed from Mr. Holton's mouth "a jeweler bag . . . with suspected Heroin

residue."   Id.   When Mr. Holton was questioned about his potential ingesting

of heroin, he "would not tell [law enforcement] if he ingested anything, saying

he didn't want to incriminate himself."   Id.   Concerned Mr. Holton may have

ingested heroin and observing Narcan, an opioid overdose injectable drug, in

the vehicle, law enforcement chose to have Mr. Holton taken by ambulance for

an evaluation.   Id.

More accurately, the finding should be "a plastic bag with suspected

heroin residue was found in Mr. Holton's mouth."   The R&R is amended to

reflect this clarification.

Mr. Holton's third objection to the R&R is sustained in part and

overruled in part.

4.      THE STOP OF DEFENDANT'S VEHICLE WAS NOT
        CONSTITUTIONAL

Mr. Holton objects to the magistrate judge's finding the stop of

defendant's vehicle was constitutional.   (Docket 146 at pp. 3-4) (referencing

Docket 140 at p. 8).   He asserts the evidence supports his claim that "this is a

pre-textual stop, and that Trooper Griffith had no probable cause to stop the

vehicle since it was not in violation of any law."   Id. at p. 3 (referencing Whren

v. United States, 517 U.S. 806 (1996); United States v. Portwood, 857 F.2d

1221 (8th Cir. 1988)).   Because Trooper Griffith acknowledged during the

hearing he was going to stop the defendant's vehicle "regardless of probable

cause," defendant submits that analysis must "apply the standard set forth [in] Portwood . . . and W[h]ren . . . ."   Id.

At issue is the constitutionality of the May 17, 2019, stop.   Specifically, the issue is whether the stop was permissible under the Fourth Amendment because: (1) Trooper Griffith had probable cause to believe Mr. Holton's vehicle was speeding, or (2) Trooper Griffith had reasonable suspicion the vehicle contained illegal narcotics at the time he initiated the stop based on the information he had received during a drug task force debrief earlier that day which connected the vehicle to an ongoing drug investigation.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."   U.S. CONST. amend. IV.   "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of" the Fourth Amendment.   Whren, 517 U.S. at 809-10.   In order not to run afoul of the Fourth Amendment, a traffic stop must therefore "be supported by probable cause or reasonable suspicion."   United States v. Gordon, 741 F.3d 872, 876 (8th Cir. 2013).

Probable cause exists when an officer has an objectively reasonable basis to believe the driver has committed a traffic violation.   Id. at 876.   "Any traffic violation, however minor, provides probable cause for a traffic stop."   United States v. Adler, 590 F.3d 581, 583 (8th Cir. 2009) (internal quotation omitted).

"This is true even if a valid traffic stop is a pretext for other investigation." United States v. Sallis, 507 F.3d 646, 649 (8th Cir. 2007) (internal quotations omitted).   Reasonable suspicion exists when an officer is "aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed."   Gordon, 741 F.3d at 876 (internal quotations omitted).   When a stop is conducted in the context of an investigation by a team of officers, however, "the issue is whether all the information known to the team provided specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the investigative stop."   United States v. Collins, 883 F.3d 1029, 1032 (8th Cir. 2018) (internal quotations omitted).   In evaluating whether a stop was supported by reasonable suspicion, the court considers "'the totality of the circumstances—the whole picture.' "   United States v. Winters, 491 F.3d 918, 921-22 (8th Cir. 2007) (quoting United States v. Sokolow, 490 U.S. 1, 8 (1989)).

In addition to accepting Trooper Griffith's testimony that defendant's vehicle was going 66 miles per hour in a 65 miles per hour zone, the magistrate judge found the stop constitutional as "Trooper Griffith had probable cause for the stop of the Suburban based on the ongoing investigation concerning a conspiracy to distribute controlled substances."   (Docket 140 at p. 8.).   The magistrate judge provided a detailed outline of the information developed in the investigation.   Id. at pp. 8-9.   Without restating the information in this order,

9

the magistrate judge found "[l]aw enforcement was entitled to stop the

Suburban based on this information alone, regardless of whether Mr. Holton,

as driver of the Suburban committed any traffic violations."   Id. at p. 9.

Even if the trooper's stop of defendant's Suburban for going one mile an

hour over the speed limit was pretextual, the magistrate judge properly

considered all the evidence collectively known to law enforcement on May 17,

2019, and properly found the stop constitutional.   The underlying drug

investigation provided reasonable suspicion to stop the vehicle.

> A traffic stop is a seizure within the meaning of the Fourth
> Amendment and, as such, must be supported by reasonable
> suspicion or probable cause. A law enforcement officer has
> reasonable suspicion to conduct an investigatory stop when the
> officer is aware of particularized, objective facts which, taken
> together with rational inferences from those facts, reasonably
> warrant suspicion that a crime is being committed.

United States v. Williams, 929 F.3d 539, 544 (8th Cir. 2019) (internal

quotations, citations and alteration omitted).   A stop "may be based on the

collective knowledge of all law enforcement officers involved in an investigation

and need not be based solely upon the information within the knowledge of the

officer on the scene if there is some degree of communication."   United States

v. Edwards, 891 F.3d 708, 711-12 (8th Cir. 2018) (internal quotation omitted).

The United States Court of Appeals for the Eighth Circuit upheld stops where

the officer on scene knew nothing but that investigators wanted the vehicle

stopped.   United States v. Robinson, 664 F.3d 701, 703-04 (8th Cir. 2011);

United States v. Jacobsen, 391 F.3d 904, 907 (8th Cir. 2004).

The court finds law enforcement had reasonable suspicion, based on the totality of the investigation, to stop the vehicle in which Mr. Holton was the driver.   Edwards, 891 F.3d at 711-12; Winters, 491 F.3d at 921-22.   That reasonable suspicion included a belief the Suburban was carrying illegal substances from Denver for distribution in South Dakota.

Defendant's fourth objection to the R&R is overruled.

## ORDER

Based on the above analysis, it is

ORDERED that the defendant's objections (146) are sustained in part and overruled in part.

IT IS FURTHER ORDERED that the report and recommendation (Docket 140) is adopted consistent with this order.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 112) is denied.

A scheduling order will be entered.

Dated January 25, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

11